# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
\* \* \*

| | |
|---|---|
| TONI INSERRA,<br><br>                              Plaintiff,<br><br>v.<br><br>PINNACLE SERVICES INC. dba SUMMIT COLLECTION SERVICES,<br><br>                              Defendant. | Case No. 3:22-CV-00300-CLB[1]<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 23] |

This case involves alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") by Plaintiff Toni Inserra ("Inserra") against Defendant Pinnacle Services Inc., dba Summit Collection Services ("Summit") arising from the collection of a debt. Currently pending before the Court is Inserra's motion for summary judgment. (ECF Nos. 23, 24.)[2] Summit opposed the motion[3], (ECF No. 25), and Inserra replied (ECF No. 26). For the reasons stated below, the Court grants, in part, and denies, in part, Inserra's motion for summary judgment (ECF No. 23).

///

///

---

[1] The parties consented to the undersigned's jurisdiction to conduct all proceedings and order the entry of final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 14).

[2] ECF No. 23 is the motion for summary judgment. ECF No. 24 is a notice of manual filing, which consists of audio files on a USB Flash Drive that have been delivered to and maintained by the Clerk's Office.

[3] Summit's response to the motion for summary judgment asserts that summary judgment is improper because genuine issues of material fact exist, but also confusingly asks the Court to "dismiss this case." (ECF No. 25 at 17.) To the extent Summit believed no genuine issues of material fact exist such that summary judgment is warranted, Summit should have filed a standalone motion for summary judgment—which Summit did not do. The Court will not interpret Summit's response as a cross-motion for summary judgment and treats it as a response only.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In June 2021, Inserra contacted All in Arbor, LLC ("All in Arbor"), a tree servicing company to perform work at Inserra's primary residence in Yerington, Nevada. (ECF Nos. 23-1; 23-2 at 1; 23-4 at 9; 23-5 at 2.) On June 14, 2021, Inserra received and accepted a proposal from All in Arbor in the amount of $2,300.00 to perform pruning services and scheduled the date for pruning for July 8-9, 2021. (ECF Nos. 23-3; 23-4 at 9; 23-5 at 2.) On June 19, 2021, Inserra contacted All in Arbor by text message stating: "another branch broken hanging over fence. Is there any way you can just get this one before July 8?" (ECF No. 23-4 at 10.) The same day, All in Arbor went to Inserra's house and advised that the broken limbs should be cut down and removed and told Inserra the removal and work was "$500.00 for today" which Inserra paid that day with Check No. 5267. (ECF Nos. 23-3; 23-4 at 11; 23-5 at 3.)

On July 8-9, 2021, All in Arbor completed the originally agreed upon pruning work. (ECF Nos. 23-3; 23-4 at 9.) Inserra paid $1,800.00 with Check No. 5269—$500.00 less than the agreed upon amount. (ECF Nos. 23-3; 23-5 at 5.) Inserra stated that she was not told the $500.00 was "in addition to the $2,300.00 or that there was an emergency call out charge." (ECF No. 23-4 at 9.) All in Arbor sent several invoices for the remaining $500, which remained unpaid. (ECF Nos. 23-3.)

On November 22, 2021, All in Arbor assigned the outstanding debt of $500.00 (the "Debt") to Summit, a debt collection agency. (ECF Nos. 5; 23-1; 23-4.) The initial collection letter dated November 23, 2021, states Summit has "instructions to take action against [Inserra]" and if her account is not paid in full within 30-days, Summit would "proceed with [a] collection action" against her. (ECF No. 23-1.)

On November 29, 2021, Inserra faxed a dispute letter to Summit claiming she paid All in Arbor in full for their services. (ECF No. 23-5 at 1.) On December 2, 2021, Inserra spoke with Summit representative Deborah Clark ("Clark") by telephone, explaining that she does not owe the Debt and demanding all future communications in writing. (ECF No. 23-6.) The next day, Inserra sent another letter to Summit

memorializing the previous day's call and reiterating her demand to cease verbal contact. (*Id*.; ECF No. 23-4 at 8.) On January 24, 2022, Inserra sent another letter wherein she disputed the Debt, demanded a written response, and notified Summit of her intent to seek legal protections for Summit's alleged continued harassment. (ECF No. 23-7.)

Summit admits Clark called Inserra on November 23, 2021, December 23, 2021, December 30, 2021, January 12, 2022, and February 4, 2022. (ECF No. 23-4 at 19.) Summit also admits it assigned "case number" 157607 to the Debt. (*Id.*) Summit, through Clark, left the following voice messages to Inserra:

    a.    December 2, 2021 [INSERRA 40]

Hi Toni, this is Debbie over at Summit Services. Could you please return my call tomorrow, December 3rd, between the hours of 8:30 and 5:00? This is regarding the concerns I received from you on case number 157607. My direct phone number is 775-323-7496.

    b.    December 8, 2021 [INSERRA 42]

This message is intended for Toni Inserra. My name's Debbie Clark. Please return my call today, December 8th, before 5:00 PM regarding case number 157607. My direct phone number is 775-323-7496.

    c.    December 23, 2021 [INSERRA 41]

Good morning, Toni, it's Debbie returning your call. The documents were mailed to you on December 3rd. They were refused by you on December 8th and returned. If you could provide me with an email, I would like to email you the documents since they were refused in the mail. If you could call me back today, December 23rd before 3:00 PM, I'd greatly appreciated it. My direct phone number is 775-323-7496.

    d.    December 30, 2021 [INSERRA 43]

This message is intended for Toni Inserra. This is Deborah Clark. This is my final attempt to reach you through this number as follow-up to our conversation

this morning, on case number 157607. Very important that you return my call today, December 30th before 5:00 PM at 775-323-7496. This is my final attempt to reach you.

    e.    January 12, 2022 [INSERRA 44]

This message is intended for Toni Inserra. This is Debbie Clark following up on the client's response I emailed or I mailed to you on January 7th. Very important you return my call today, January 12th before 5:00 PM at 775-323-7496.

    f.    February 4, 2022 [INSERRA 45]

This message is intended for Toni Inserra. This is Debbie Clark. My only attempt to reach you as follow-up to the documents I mailed to you last Friday on case number 157607. Very important you return my call today, February 4th before 5:00 PM at 775-323-7496. No more faxes, no more emails. Very important you call me today before 5:00.

(ECF No. 24 (audio files).)

        In her declaration in support of the motion for summary judgment, Inserra asserts that she suffers from loss of sleep and ongoing, severe anxiety "due to Summit's continued harassment, intimidation, threats, and legal violations." (ECF No. 23-2 at 3.) She lives in constant fear of being harassed by Summit. (*Id.*) Her anxiety forced her to seek treatment with a physician to cope with her symptoms. (*Id.*) Inserra claims she has withdrawn herself from social situations out of fear of being served or tracked by Summit. (*Id.*) She was also forced to use approximately 40 hours of vacation time from work. (*Id.*)

        Inserra filed this lawsuit on July 1, 2022, alleging violations of the FDCPA against Summit. (ECF No. 1.) Specifically, the complaint asserts and alleges the following specific violations of the FDCPA:

    (1)    § 1692d by harassing, oppressing, and abusing Inserra when it continued to contact her after multiple demands to cease, in an attempt to force her to pay the Debt.

(2) § 1692d by harassing, oppressing, and abusing Inserra when it continued to call her, leaving multiple voice messages after her demand for all communications to be in writing.

(3) § 1692e(2)(A) by falsely representing the character, amount, and legal status of the Debt by seeking amounts not authorized between Inserra and the Creditor and by falsely claiming that the Debt was subject to a collection action.

(4) § 1692e(5) by threatening legal action against Inserra for the Debt in its Initial Collection Letter when it had no intent to file a lawsuit against her and had not filed or approved a lawsuit for filing.

(5) § 1692e(5) by using fake "case numbers" and falsely claiming each call was its "final attempt" thereby threatening legal action against Inserra for the Debt when it had no intent to file a lawsuit against her and had not filed or approved a lawsuit for filing.

(6) § 1692e(10) by violating the Consumer Financial Protection Bureau Rule and including extraneous information in its calls to Inserra to coerce her into paying the Debt.

(7) § 1692e(10) by using fake "case numbers" and falsely claiming each call was its "final attempt" in order to deceive Inserra into paying the Debt.

(8) § 1692e(11) by failing to provide a "mini-Miranda" warning with each communication made to Inserra to collect the Debt.

(9) § 1692f by using unfair or unconscionable means to collect or attempt to collect the Debt by making false and empty threats of litigation against Inserra and providing Inserra with fake "case numbers" to coerce her into paying the Debt.

(10) § 1692f(1) by seeking to collect interest, fees, charges, and expenses not expressly authorized by the agreement creating the Debt or permitted by law by seeking to collect the Debt when Inserra does not owe the Debt.

(*Id.* at 6-7.)

On January 26, 2023, the parties entered a stipulation and proposed order regarding authenticity of admissibility of documents, which the Court granted. (ECF Nos. 20, 21.) The stipulation applied to documents and evidence produced by Summit as SCS 1-48 and produced by Inserra as Inserra 1-45 (the "Documents"). (ECF No. 20.) Inserra now moves for summary judgment. (ECF No. 23.)

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a

genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show

more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### III.  DISCUSSION

#### A.  Article III Standing

As a preliminary matter, Summit argues that Inserra lacks Article III standing to bring this lawsuit because she failed to provide evidence such as medical reports, bills, or a diagnosis that she received medical treatment that could point to Summit being responsible for her claimed injuries. (ECF No. 25 at 14.) The Court disagrees with Summit that Inserra lacks Article III standing.

To have Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339. Even if a statute grants a plaintiff a statutory

right and purports to authorize that plaintiff to sue to vindicate that right, that plaintiff does not automatically have Article III standing unless that plaintiff has suffered a concrete injury. *Id.* at 341. To find that the alleged injury to the plaintiff constitutes a concrete injury, a court must determine that the alleged injury to the plaintiff has a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts. *Id.* Additionally, if the statutory violation does not actually harm the plaintiff or present a material risk of harm that has materialized, then the plaintiff has not suffered a concrete injury. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211–12 (2021). For claims brought under Sections 1692e and 1692f of the FDCPA, the closest common-law analog to those claims is fraud, which required proof of detrimental reliance. *Adams v. Skagit Bonded Collectors, LLC*, 836 F. App'x 544, 546 (9th Cir. 2020); *see also Uvaldo v. Germaine L. Off. PLC*, No. CV-20-00680- PHX-JJT, 2022 WL 194536, at *1–3 (D. Ariz. Jan. 21, 2022).

Here, Inserra asserts in her sworn declaration that she suffered multiple injuries and harm because of Summit's alleged violations, namely: (1) loss of sleep; (2) acute and ongoing anxiety; (3) loss of quality of life; (4) use of vacation time from work; and (5) loss of credit expectancy. (ECF No. 23-2.) Additionally, Inserra provides an expert report and credit report, (ECF Nos. 23-10, 23-12), which detail and support the harm Inserra asserts she suffered because of Summit's actions. Taken together, Inserra's allegations are sufficient to establish Article III standing. *See e.g., Salazar v. ABC Auto. Invs.*, LLC, No. 2019 WL 2928756, at *2 (D. Nev. July 8, 2019) (finding allegations of anxiety, loss of sleep and appetite, and humiliation confer Article III Standing).

### B. Inserra's Motion for Summary Judgment on FDCPA Claims

Inserra maintains she is entitled to summary judgment because Summit violated the FDCPA while attempting to collect a debt. The FDCPA "prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices" and creates a private right of action to enforce its provisions. *Heintz v. Jenkins*, 541 U.S. 291, 292 (1995); *see* 15 U.S.C. § 1692k. To prevail on a claim under

the FDCPA, a plaintiff must show: (1) they are a consumer; (2) the debt arises out of a transaction entered into for personal, family, or household purposes; (3) the defendant is a debt collector; and (4) that the defendant violated one of the provisions of the FDCPA. *Freeman v. ABC Legal Servs. Inc.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal. 2011);15 U.S.C. §§ 1692a(6); 1692k; 1692a(5).

The FDCPA is a strict liability statute, thus, to prevail on an FDCPA claim a plaintiff is not required to prove that the defendant intentionally violated the FDCPA. *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 (9th Cir. 2011). Moreover, the Ninth Circuit analyzes FDCPA claims according to the "least sophisticated debtor" standard. *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996). The least sophisticated debtor standard is an objective analysis that considers whether the debt collector's communication would mislead the least sophisticated debtor. *See Gonzales*, 660 F.3d at 1061. If a court determines that the debt collector's communication would mislead the least sophisticated debtor, then the debt collector has violated a provision of the FDCPA, thus making the debt collector liable under the FDCPA. *See Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010).

The parties do not dispute that Inserra is a consumer or that Summit is a debt collector. Thus, the only elements at issue are: (1) whether the debt arises out of a transaction entered into for personal, family, or household purposes; and (2) whether Summit violated one of the provisions of the FDCPA. Each is discussed in turn.

### 1.   Primarily for Personal, Family, or Household Purposes

Inserra argues that the "debt" at issue in this case is for landscaping and tree care at Inserra's home, which qualifies as a debt for "personal, family, or household purposes" since it concerns services performed at Inserra's primary residence and not a business or commercial enterprise. (ECF No. 23.) Summit disputes that the debt arises out of a transaction entered into for personal, family, or household purposes, and instead argues the debt is "agricultural" in nature, such that it is not a debt as defined by the FDCPA. (ECF No. 25.)

The FDCPA defines debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes ..." 15 U.S.C. § 1692a(5); *see also Bloom v. I.C. Sys. Inc.*, 972 F.2d 1067, 1068–69 (9th Cir. 1992) (explaining that the FDCPA applies to debts incurred for personal rather than commercial reasons). The Ninth Circuit has held that homeowners' association ("HOA") fees for common areas are "debts" under the FDCPA. *See McNair v. Maxwell & Morgan PC*, 893 F.3d 680, 683 (9th Cir. 2018). Similarly, in *Thies v. L. Offs. of William A. Wyman*, 969 F. Supp. 604, 608 (S.D. Cal. 1997), the court held that "[t]he maintenance and improvement of common areas serve a "personal, family, or household purpose" as required by the FDCPA." In finding that HOA payments qualify as a "debt," the court explained that "[t]he upkeep of such common areas serves the purpose of preserving the aesthetic nature of the housing development for the use and enjoyment of each association member." *Id.* Because HOA fees for the upkeep of common areas are considered a debt under the FDCPA, the Court expressly finds that fees associated with a tree trimming service on Inserra's personal property are also considered a debt under the FDCPA.

Based on the above, Inserra has shown all preliminary FDCPA elements have been met. As such, the Court now turns to whether Summit violated any provisions of the FDCPA.

### 2.   Inserra's Section 1692e(2)(A) and 1692f(1) Claims

First, Inserra does not move for summary judgment as to her § 1692e(2)(A) or § 1692f(1) claims. (*See* ECF No. 23.) Inserra's complaint states Summit violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character, amount, and legal status of the Debt by seeking amounts not authorized between Inserra and the Creditor and by falsely claiming that the Debt was subject to a collection action. (ECF No. 1 at 6-7.) Inserra's complaint additionally states Summit violated 15 U.S.C. § 1692f(1) by seeking to collect interest, fees, charges, and expenses not expressly authorized by the agreement

creating the Debt or permitted by law by seeking to collect the Debt when Inserra does not owe the Debt. (*Id.*) Although the Court need not address these claims, the Court expressly finds that genuine issues of material fact exist as to whether Inserra owed the Debt.

### 3. Inserra's Section 1692d Claims

Next, Inserra claims Summit violated § 1692d by harassing, oppressing, and abusing her when Summit continued to: (1) contact Inserra after multiple demands to cease, in an attempt to force her to pay the Debt; and (2) call Inserra, leaving multiple voice messages after her demand for all communications to be in writing. (ECF No. 1 at 6.)

Section 1692d(5) makes it unlawful for debt collectors to cause a telephone to ring or engage any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. 15 U.S.C. § 1692d(5). Section 1692d(5) plainly provides that in order to prevail under § 1692d(5), the consumer must show not only that the contents of the calls were harassing or abusive but must also establish that the caller intended such result. The plaintiff carries the burden of showing that the debt collector's calls violate § 1692d(5). *Kerwin v. Remittance Assistance Corp.*, 559 F.Supp.2d 1117, 1124 (D. Nev. 2008). "Intent to annoy, abuse, or harass may be inferred from the frequency of phone calls, the substance of the phone calls, or the place to which phone calls are made." *Id.*

Here, Inserra did not explicitly request that Summit stop contacting her completely, but rather asked that communications be made in writing. However, Inserra also <u>requested</u> telephonic communication on January 6, 2022. Thus, the Court finds genuine issues of material fact exist as to whether Summit <u>intended</u> to harass Inserra when it contacted her to collect the Debt when Inserra initiated telephonic communication on her own. Based on the facts before the Court, the Court concludes that a reasonable juror could find that Summit placed its calls to Inserra with the intent to reach her to collect the Debt, and not because it intended to annoy, abuse, or harass

her. Thus, Inserra's motion for summary judgment is denied on the § 1692d claims.

### 4. Inserra's Section 1692e Claims

Inserra argues that no triable issue of fact exists that Summit's debt collection attempts violated subsections 1692e, 1692e(5), 1692e(10), and 1692e(11) of the FDCPA. Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e(5) prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Section 1692e(10) prohibits the use of "any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10). Section 1692e(11) prohibits the failure "to disclose in subsequent communications that the communication is from a debt collector." 15 U.S.C. § 1692e(11).

To be actionable under the FDCPA, a debt collector's false, deceptive, or misleading representations must be "material." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1119 (9th Cir. 2014); *see also Donohue*, 592 F.3d at 1033 (stating that an immaterial statement—even if it is false in some technical sense—does not violate the FDCPA). Only genuinely misleading statements that frustrate a consumer's ability to intelligently choose his or her response are material. *Id.* at 1034.

As discussed above, the Court finds that genuine issues of material fact exist as to whether Inserra owed the Debt. Thus, because a reasonable juror could find that Inserra owed the Debt, a reasonable juror could also necessarily find that Summit did not use "any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Stated another way, if a juror found that Inserra owed the Debt, a reasonable juror could also find that the communications used to obtain the Debt would not mislead the least sophisticated debtor because Summit was legally entitled to collect the Debt. Thus, Inserra's motion for summary judgment is denied on the § 1692e claims.

///

### 5. Inserra's Section 1692f Claim

Finally, Section 1692f prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. As stated above, because a reasonable juror could find that Summit was legally entitled to collect all amounts that it requested from Inserra, the amounts that Summit requested would not mislead the least sophisticated debtor. Accordingly, because genuine issues of material fact exist, Inserra's motion for summary judgment is denied on the Section 1692f claim.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines they do not warrant discussion as they do not affect the outcome of the issues before the Court.

For the reasons stated above, **IT IS ORDERED** that Inserra's motion for summary judgment, (ECF No. 23), is **GRANTED, IN PART, AND DENIED, IN PART**, as follows:

- Inserra's motion is granted insofar as there are no genuine issues of material fact that: (1) Inserra is a consumer; (2) the debt arises out of a transaction entered into for personal, family, or household purposes; and (3) Summit is a debt collector.
- Inserra's motion is denied insofar as there are genuine issues of material fact as to whether Summit violated any of the provisions of the FDCPA.

**IT IS FURTHER ORDERED** that the parties shall have **30 days** to file their joint pretrial order.

DATE: May 10, 2023.

_____
**UNITED STATES MAGISTRATE JUDGE**